FILED

2014 Jan-08  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO:** |
| | ) | |
| **PROGRESSIVE DIRECT INSURANCE COMPANY.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Pennsylvania National Mutual Casualty Insurance Company ("Penn National") hereby files this action for equitable subrogation / contribution and declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C.A. § 2201, *et seq.* and 28 U.S.C.A. §§ 1332, 1333 and state as follows:

### PARTIES AND INSURED

1.     Penn National is a corporation incorporated under the laws of Pennsylvania, with its principal place of business in Pennsylvania.

2.     Allstate Electric is an Alabama corporation with its principal place of business in Jefferson County, Alabama.

3.     Progressive Direct Insurance Company ("Progressive"), is an Ohio insurance corporation with its principal place of business in Ohio.

## VENUE AND JURISDICTIONAL ALLEGATIONS

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332, and

the Declaratory Judgment Act, 28 U.S.C. § 2201, because the amount in controversy exceeds

$75,000.00, exclusive of costs and interest, and because there exists complete diversity of

citizenship among the Plaintiff and the Defendant.

5.     Courts traditionally have calculated the amount in controversy limit, as

contemplated by 28 U.S.C.A. § 1332, in the following manner:

> In a declaratory judgment action, the amount in controversy is the monetary value
> of the object of the litigation from the plaintiff's perspective.   The plaintiff
> satisfies the amount in controversy requirement by claiming a sufficient sum in
> good faith.   Where, as here, an insurer seeks a determination that it has no duty to
> defend a separate, underlying lawsuit, the court may take into account not only
> the recovery sought in the underlying suit, but also the pecuniary value of the
> [insurer's] obligation to defend the separate lawsuit.

*Owners Ins. Co. v. Bryant*, 2006 WL 50488 (M.D. Ga. 2006), citations omitted.

The Underlying Lawsuit was filed on August 29, 2006, and has only recently settled after a trial,

post-judgment briefing, and an appeal.   Because of the complex nature of the Underlying

Lawsuit, Penn National incurred approximately $430,000 in defense of Allstate Electric in the

Underlying Lawsuit, which exceeds the threshold amount.   See, *Stonewall Ins. Co. v. Lopez*, 544

F.2d 198, 199 (5th Cir. 1976) (court considered policy limit together with the cost of defense to

determine whether the amount in controversy exceeded the jurisdictional amount).

6.     Venue of this suit is appropriate in the United States District Court for the

Northern District of Alabama pursuant to 28 U.S.C.A. § 1391 because: Penn National and

Progressive conduct business in the Northern District of Alabama; Allstate Electric's principal

place of business is located in the Northern District of Alabama, and Progressive's contacts in

the Northern District of Alabama would be sufficient to subject it to personal jurisdiction.

## FACTUAL BACKGROUND

### A.   PEARL PUTMAN, ALEXANDER AKINS, AND MORGAN AKINS FILE UNDERLYING LAWSUIT

7.     This is a declaratory judgment action which has its genesis in an underlying action filed on or about August 29, 2006, and is styled *Pearl Putman et al. v. Gene William Cheshire et al.*; Case No. CV-2006-000468 in the Circuit Court of Walker County, Alabama ("Underlying Lawsuit").   (Complaint in Underlying Lawsuit, as amended, attached hereto as Exhibit A) The Underlying Lawsuit arose from a motor vehicle accident that occurred on August 25, 2006, in which a vehicle driven by Gene William Cheshire ("Cheshire") collided with a vehicle driven by Pearl Putman.   Two minors, Alexander Akins and Morgan Akins, Ms. Putnam's grandchildren, were passengers in Ms. Putman's vehicle.

8.     On August 25, 2006, Allstate Electric was a subcontractor performing electrical work at a dental clinic in Jasper, Alabama.   Cheshire was an employee of Allstate Electric on said date.   After completing work on said date, Cheshire left the job site to travel to Home Depot for the purpose of purchasing sheetrock for use in his home.   Cheshire next left Home Depot and continued driving to his residence in Cullman County.   Cheshire was driving home in his personal vehicle, when he collided with the vehicle driven by Putman.   The vehicle driven by Cheshire at the time of the accident was insured by Progressive.

9.     On or about August 25, 2006, Pearl Putman and her grandchildren, Alexander Akins and Morgan Akins, by and through their legal guardian and parent, Steve Lewis Akins, filed the "Underlying Lawsuit," against Cheshire, Betty M. Trice, and Allstate Electric, seeking to recover for bodily injuries sustained in the motor vehicle accident. The Complaint filed in the Underlying Lawsuit allege as follows: Count I – Negligence and Wantonness, Count II – Joint

Venture, Count III – Negligent and Negligent Entrustment, and Count IV – Negligent Supervision and Training, Count V – Negligence. (Ex. A)

      10.    The Complaint alleges the following damages were caused by Cheshire:

          20.    As a proximate result of said Defendants' negligence and/or wantonness and/or wrongful conduct, which said negligence and/or wantonness and/or conduct combined and concurred, caused or contributed to cause the traumatic injuries suffered by Plaintiffs.

          23.    As a proximate result of said Defendants' negligence and/or wantonness and/or wrongful conduct, which said negligence and/or wantonness and/or conduct combined and concurred, caused or contributed to cause the serious bodily injuries suffered by Plaintiffs.

          27.    As a proximate consequence of the negligence and incompetency of Defendant Cheshire, concurring with the negligent entrustment of the vehicle to him by Defendants' Betty M. Trice and/or Allstate Electric Co. Inc. and/or Fictitious Defendants, Plaintiffs suffered serious and traumatic injuries. In addition to all other allegations, Plaintiffs claim Defendants, jointly, separately and severally caused or contributed to cause the serious bodily injuries to plaintiffs.

          32.    At the aforesaid time and place, and for sometime prior thereto, the Defendants, Betty M. Trice and/or Allstate Electric Company, Inc., including Fictitious Defendants, were the owners, lessors, and/or lessees of said motor vehicle operated by Defendant Cheshire, and as such, had the authority to supervise the maintenance, operation, and repair of said motor vehicle operated by or on behalf of Defendants Betty M. trice and/or Allstate Electric Company, Inc., including Fictitious Defendants.  Said Defendants negligently or wantonly exercised or failed to exercise said supervisory control and said negligent and/or wanton conduct was a proximate cause of the plaintiffs' injuries.

(Ex. A).

      11.    In the underlying trial a jury returned a verdict for the plaintiffs on both the negligence and the wantonness claims: Peal Putnam: compensatory $25,000 / punitive $25,000; Alex Akins: compensatory $30,000/ punitive $25,000; and Morgan Akins: compensatory

$150,000 / punitive $6,000,000.  Pursuant to a motion for remitter the trial court entered an order reducing the punitive damages to $10,000 for Putnam; $10,000 for Alex Akins and $100,000 for Morgan Akins but allowing the plaintiffs the option of refusing to accept the reduced amounts in favor of a new trial.  Plaintiffs choose a new trial.  Allstate Electric appealed.  On July 23, 2010 the Alabama Supreme Court held that Allstate Electric was entitled to a judgment as a matter of law on the wantonness claims and thus no punitive damages could be awarded.  The Alabama Supreme Court also held that the trial court could order a new trial.

12.     Just prior to the release / announcement of the Alabama Supreme Court's ruling the parties agreed upon a settlement of all the claims: $25,000 to Putnam; $25,000 to Alex Akins and $650,000 to Morgan Akins for a total settlement of $700,000.  Progressive paid the settlement for the Putnam claim as the primary carrier.  Because Alex and Morgan Akins are minors settlement of their claims required court approval.  The trial court approved Alex Akins settlement and Progressive paid the settlement ($25,000,000) of the Alex Akins claim as the primary carrier.  The releases paid for by Progressive release both Cheshire and Allstate Electric. Initially, the trial court did not approve the settlement of the Morgan Akins settlement. Subsequently, the Morgan Akins claim was settled against both Cheshire and Allstate Electric. On September 23, 2013 the trial court entered an order approving the pro ami settlement in the amount of $1.5 million dollars and a guardian ad litem fee of $45,000 taxed against Cheshire and Allstate Electric.   Progressive paid the remaining $50,000 of its policy limit towards the settlement of the Morgan Akins claims.  Eight days later on October 1, 2013 the parties filed a joint stipulation of dismissal, dismissing the claims of Morgan Akins against Cheshire and Allstate Electric.

**B.   INSURANCE POLICY AND POLICY PROVISIONS**

13.   At the time of the subject accident giving rise to the Underlying Lawsuit Allstate Electric was insured under a business auto coverage form issued by Penn National.  (Business Auto Coverage Form, attached hereto as Exhibit B).  Accordingly, Allstate Electric was provided a defense in the Underlying Lawsuit by Penn National pursuant to a complete reservation of rights.

14.   Progressive issued an Auto Policy to Cheshire.   Progressive's policy was delivered in Alabama and as such Alabama law governs its interpretation.

15.   Allstate Electric and Penn National sought coverage, including a defense, from Progressive during the pendency of the Underlying Lawsuit; but Progressive denied Allstate Electric's tender of its defense and refused to contribute to or provide for Allstate's Electric's defense.  (See Correspondence attached hereto as Exhibit C).  Penn National files this Complaint for Declaratory Judgment seeking a determination of whether Progressive had a duty under the policy insuring Cheshire's vehicle, discussed further below, to defend and/or indemnify Allstate Electric for the claims asserted by Putman and Akins in the Complaint against Allstate.  Penn National seeks to recover from Progressive pursuant to theories of equitable contribution and/or equitable subrogation.

<u>**COUNT ONE**</u>

<u>**EQUITABLE SUBROGATION**</u>

16.   Penn National adopts and incorporates paragraphs 1-13 as if fully restated herein.

17.   Upon information and belief Allstate Electric is an "insured person" as defined by the Progressive policy. Progressive's policy insuring Cheshire provided primary coverage for

Allstate Electric as an insured person to extent it is responsible for the acts or omissions of Cheshire.

18.     Specifically, the Progressive policy provides coverage for the claims asserted against Allstate Electric arising from the acts or omissions of Cheshire by Putman and her minor grandchildren in their Complaint filed in the Underlying Lawsuit.

19.     Penn National has provided a defense to Allstate Electric for the claims by Putman and Akins under a reservation of rights. Penn National contends that its policy provided excess coverage and that Progressive's policy provided primary coverage to Allstate Electric for the claims presented in the Underlying Lawsuit.  The Penn National policy provides that for any auto not owned by Allstate Electric that the coverage provided is excess over any other collectible insurance.  (Ex. B p. 9 ¶5.a.)

20.     Given the nature of the claims and the application of same to the Progressive and Penn National auto policies, Progressive should be required to reimburse Penn National for the costs expended in the defense of claims by the Putman and Akins asserted in the Underlying Lawsuit against Allstate Electric.

**WHEREFORE,** seeks a declaration from this Court as follows:

A.     That a bona fide justiciable controversy exists between the parties which should be resolved.

B.     That the subject Penn National and Progressive auto policies, and all endorsements thereto, are clear and unambiguous.

C.     That Progressive owed a defense and indemnity to Allstate Electric under its policy for the claims asserted in the Underlying Lawsuit.

D.     That pursuant to the doctrine of equitable subrogation Penn National is entitled to a judgment reimbursing it for: (1.) the costs expended defending Allstate Electric ($426,766.13) in the Underlying Lawsuit; and (2.) $22,500 for Allstate Electric's share of the guardian ad litem fee; and (3.) interest for the amount owed and the costs of bringing this action.

7

    E.      Granting Penn National such other, further, and different relief to which it may be entitled.

## COUNT TWO

### EQUITABLE CONTRIBUTION

21.    Penn National adopts and incorporates paragraphs 1–18 as if the same were set out fully herein.

22.    Upon information and belief Allstate Electric is an "insured person" as defined by the Progressive policy. Progressive's policy insuring Cheshire provided coverage for Allstate Electric as an insured person to extent it is responsible for the acts or omissions of Cheshire.

23.    Both the Penn National and the Progressive policy provided coverage for certain claims asserted against Allstate Electric by Putman and her minor grandchildren in the Complaint filed in the Underlying Lawsuit.

24.    Although both Progressive and Penn National owed Allstate a defense in the Underlying Lawsuit; only Penn National provided a defense to Allstate Electric for the claims by Putman and Akins.

25.    To the extent that this court determines that both Penn National and Progressive owed concurrent obligations to Allstate Electric, Progressive should be required to reimburse Penn National for half of the costs expended in the defense of claims by the Putman and Akins asserted in the Underlying Lawsuit against Allstate Electric.  Progressive should also be required to contribute to the settlement of its "insured person" Allstate Electric.

**WHEREFORE,** seeks a declaration from this Court as follows:

    A.      That a bona fide justiciable controversy exists between the parties which should be resolved.

    B.      That the subject Penn National and Progressive auto policies, and all

endorsements thereto, are clear and unambiguous.

C.      That Progressive owed a defense and indemnity to Allstate Electric under its policy for the claims asserted in the Underlying Lawsuit.

D.      That pursuant to the doctrine of equitable contribution Penn National is entitled to a judgment reimbursing it for: (1.) fifty (50%) percent of the costs, including attorneys fees, expended defending Allstate Electric ($213,383.06) in the Underlying Lawsuit; and (2.) 50% percent of the guardian ad litem fee attributable to Allstate; and (3.) interest for the amount of reimbursement owed and the costs of bringing this action.

E.      Granting Penn National such other, further, and different relief to which it may be entitled.


/s/ Howard K. Glick
Howard K. Glick
Attorney for Plaintiff Penn National Mutual Casualty Insurance Company
Simpson, McMahan, Glick & Burford, PLLC
The Mountain Brook Center
2700 Highway 280, Suite 203W
Birmingham, AL  35223-2468
Ph:     (205) 876-1600
Fax:    (205) 876-1616
Email: hkglick@smgblawyers.com

PLEASE SERVE THIS COMPLAINT ON THE DEFENDANT VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED AS FOLLOWS:

Progressive Direct Insurance Company
c/o C T Corporation System
2 North Jackson Street Suite 605
Montgomery, Alabama 36104

# EXHIBIT A

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT – CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br>`C V` `2 0 0 6` **468** `☐☐` - `☐`<br>Date of Filing:                      Judge Code:<br>`☐☐☐` `☐☐☐` `☐☐☐☐`  `☐☐☐☐☐`<br>Month     Day     Year |
|---|---|---|

### GENERAL INFORMATION

IN THE CIRCUIT COURT OF _____ Walker _____, ALABAMA

*(Name of County)*

Pearl Putman, et al _____ v. _____ Gene William Cheshire, et al

| **Plaintiff** | | **Defendant** | |
|---|---|---|---|
| First Plaintiff ☐ Business ☑ Individual | | First Defendant ☑ Business ☑ Individual | |
| ☐ Government ☐ Other | | ☐ Government ☐ Other | |

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) the best characterizes your action:

**TORTS: PERSONAL INJURY**        ~~FILE~~
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General      AUG 29
- ☑ TOMV - Negligence: Motor Vehicle
- ☑ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD      CLERK - WALKER
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☑ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☑ COCN - Conversion
- ☑ CEQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction<br>Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** *(check one):*   F ☑ INITIAL FILING        A ☐ APPEAL FROM        O ☐ OTHER: _____
                                                        DISTRICT COURT
                        R ☐ REMANDED        T ☐ TRANSFERRED FROM
                                                        OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO    **Note:** Checking "Yes" does not constitute a demand for a<br>jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
`0 3 7 w a r`    _____
                    Date                    Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**   ☐ YES ☐ NO ☑ UNDECIDED

## IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

PEARL PUTMAN, an individual;

ALEXANDER AKINS, an unmarried minor,
by and through his legal guardian and parent
STEVE LEWIS AKINS, and;

**FILED**

**AUG 29 2006**

*Unity B. Hormand*
CIRCUIT CLERK - WALKER COUNTY, AL

MORGAN AKINS, an unmarried minor,
by and through his legal guardian and parent
STEVE LEWIS AKINS

    Plaintiffs,

v.                CASE NO. CV-2006- *468*

GENE WILLIAM CHESHIRE, individually, and as agent,
    servant and employee of ALLSTATE ELECTRICAL CO, INC. and;

BETTY M. TRICE, individually;

ALLSTATE ELECTRICAL CO, INC., a company doing business in the State of Alabama;

    Defendants.

### S U M M O N S

    This service by *certified mail* of this Summons and Complaint, is initiated upon the written request of Plaintiff's attorneys pursuant to Alabama Rules of Civil Procedure.

                                      John E. Warren, III, Attorney

**SERVE BY CERTIFIED MAIL NOTICE TO:**
Gene William Cheshire
256 County Road 513
Hanceville, AL 35077

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the complaint to the plaintiff's attorneys, <u>John E. Warren, III, Warren & Associates, L.L.C., 105 19th Street East, Post Office Box 2992, Jasper, Alabama 35502</u>. **THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN** __30__ **DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.** You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.
DATED:_____     _____

                                 CLERK OF COURT
                                 By:_____

IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

PEARL PUTMAN, an individual;

ALEXANDER AKINS, an unmarried minor,
by and through his legal guardian and parent
STEVE LEWIS AKINS, and;

**FILED**

**AUG 29 2006**

*Anita B. Kinsaul*
CIRCUIT CLERK · WALKER COUNTY, AL

MORGAN AKINS, an unmarried minor,
by and through his legal guardian and parent
STEVE LEWIS AKINS

 Plaintiffs,

v.           CASE NO. CV-2006-*468*

GENE WILLIAM CHESHIRE, individually, and as agent,
  servant and employee of ALLSTATE ELECTRICAL CO, INC. and;

BETTY M. TRICE, individually,

ALLSTATE ELECTRICAL CO, INC., a company doing business in the State of Alabama;

 Defendants.

## S U M M O N S

  This service by *certified mail* of this Summons and Complaint, is initiated upon the written request of Plaintiff's attorneys pursuant to Alabama Rules of Civil Procedure.

           _____
           John E. Warren, III, Attorney

**SERVE BY CERTIFIED MAIL NOTICE TO:**

Betty M. Trice
4596 U.S. Hwy 11
Springville, AL 35146

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the complaint to the plaintiff's attorneys, <u>John E. Warren, III, Warren & Associates, L.L.C., 105 19th Street East, Post Office Box 2992, Jasper, Alabama 35502</u>. **THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __30__ DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.** You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.
DATED:_____

        CLERK OF COURT
        By:_____

IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

PEARL PUTMAN, an individual;

ALEXANDER AKINS, an unmarried minor,
by and through his legal guardian and parent
STEVE LEWIS AKINS, and;

MORGAN AKINS, an unmarried minor,
by and through his legal guardian and parent
STEVE LEWIS AKINS

    Plaintiffs,

v.

        CASE NO. CV-2006-**468**

GENE WILLIAM CHESHIRE, individually, and as agent,
    servant and employee of ALLSTATE ELECTRICAL CO, INC. and;

BETTY M. TRICE, individually;

ALLSTATE ELECTRICAL CO, INC., a company doing business in the State of Alabama;

    Defendants.

**FILED**

AUG 29 2006

*[signature]*
CIRCUIT CLERK - WALKER COUNTY, AL

### S U M M O N S

    This service by *certified mail* of this Summons and Complaint, is initiated upon the written request of Plaintiff's attorneys pursuant to Alabama Rules of Civil Procedure.

        *[signature]*
        John E. Warren, III, Attorney

**SERVE BY CERTIFIED MAIL NOTICE TO:**

AllState Electric Company, Inc.
c/o Ken L. Harrison
4003 1ˢᵗ Avenue N.
Birmingham, AL 35222-1503

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the complaint to the plaintiff's attorneys, <u>John E. Warren, III, Warren & Associates, L.L.C., 105 19th Street East, Post Office Box 2992, Jasper, Alabama 35502</u>. **THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN   30   DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.** You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.
DATED:_____

        CLERK OF COURT
        By:_____

IN THE CIRCUIT COURT OF WALKER COUNTY, ALABAMA

PEARL PUTMAN, an individual;

ALEXANDER AKINS,  an unmarried minor,
by and through his legal guardian and parent
STEVE LEWIS AKINS, and;

MORGAN AKINS, an unmarried minor,
by and through his legal guardian and parent
STEVE LEWIS AKINS

       Plaintiffs,

v.

       CASE NO. CV-2006- *468*

GENE WILLIAM CHESHIRE, individually, and as agent,
    servant and employee of ALLSTATE ELECTRIC CO, INC. and;

BETTY M. TRICE, individually,

ALLSTATE ELECTRIC CO, INC., a company doing business in the State of Alabama;

**Fictitious Defendant No. 1**, whether singular or plural, that entity or those entities, that
individual or those individuals, whose negligence, wantonness or other wrongful conduct
contributed to cause the occurrence made the basis of this lawsuit;

**Fictitious Defendant No. 2**, whether singular or plural, that entity or those entities who or which
provided any insurance coverage, of whatever kind or character, to any of the named or fictitious
defendants named herein;

**Fictitious Defendant No. 3**, whether singular or plural, that entity, which is the successor in
interest to any of the fictitious defendants named herein;

**Fictitious Defendant No. 4**, whether singular or plural, intending to refer to the true name of that
person, firm, corporation, or other entity who or which negligently and/or wantonly operated the
vehicle which collided with the Plaintiffs' vehicles on the date and occasion made the basis of
this lawsuit and whose negligent and/or wanton operation was the proximate cause of the injuries
sustained by Plaintiffs;

**Fictitious Defendant No. 5**, whether singular or plural, intending to refer to the true name of that

FILED

AUG 29 2006

CIRCUIT CLERK - WALKER COUNTY, AL

1

person, firm, corporation, or other entity who or which entered into a joint venture with the name and/or the fictitious defendants named herein whose negligence, wantonness, and/or wrongful acts were the proximate cause of the injuries sustained by Plaintiffs;

**Fictitious Defendant No. 6,** whether singular or plural, intending to refer to the true name of that person, firm, corporation, or other entity or successor in interest who or which jointly, separately, and/or severally negligently, wantonly, and/or wrongfully caused or contributed to Plaintiffs' injuries on the occasion made the basis of this lawsuit.

**Fictitious Defendant No. 7,** whether singular or plural, intending to refer to the true name of that person, firm, corporation, or other entity or successor in interest who or which jointly, separately, and/or severally and as such, had the authority to supervise the hiring and training of drivers of motor vehicles operated by or on behalf of said Defendants.  Said Defendants negligently and/or wantonly exercised or failed to exercise said supervisory control and said negligent and/or wanton conduct was a proximate cause of the plaintiffs' injuries.

Plaintiff avers that the identity of the fictitious party defendants herein are otherwise unknown to the Plaintiff at this time or, if their names are known to the Plaintiff at this time, their identity as proper party defendants is not known to the Plaintiff at this time, and their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained.

**Defendants.**

---

## COMPLAINT

---

## PARTIES

1.     Plaintiff Pearl Putman is over the age of 19 years and is a resident citizen of Walker County, Alabama, and has been for more than six months next preceding the filing of this complaint.

2.     Plaintiff Alexander Akins, is a minor who  is under the age of 19 years and is a resident citizen of Walker County, Alabama, and has been for more than six months next preceding the filing of this complaint.

3.     Plaintiff Morgan Akins is a minor who is under the age of 19 years and is a resident citizen of Walker County, Alabama, and has been for more than six months next preceding the filing of this complaint.

4.     Defendant All State Electric Company, Inc. is a domestic corporation incorporated in the State of Alabama with its principal place of business in Jefferson County, Alabama.  At all times relevant to the occurrence made the basis of this complaint, said

2

defendant owned and operated a business engaged, in part, as a electrical contractor.

5.      To the best of Plaintiffs' knowledge, information and belief, Defendant Betty M Trice was the owner and/or operator and/or lessor and/or company otherwise responsible for the F150 Pickup, VIN 1FTEX15N7SKB99387 made the basis of this lawsuit.

6.      Defendant Gene William Cheshire (hereinafter referred to as "Cheshire") is over the age of 19 years and is a resident citizen of Alabama, and has been for more than six months next preceding the filing of this complaint.

7.      To the best of Plaintiffs' knowledge, information and belief, Defendant Cheshire was operating the service truck owned by Betty M. Trice, on the occasion of the accident made the basis of this complaint and was acting within the line and scope of his employment and/or business relationship with the Defendants, their agents, servants, employees, contractors, subcontractors, joint venturers or those over whom they controlled or reserved the right to control at the time of the accident made the basis of this lawsuit, and was on an express business mission and purpose for the benefit of Defendants and/or was acting under the right of control or reserved right of control of Defendants and/or was acting as a joint venturer with Defendants.

8.      Defendant Betty M. Trice (hereinafter referred to as "Trice") is over the age of 19 years and is a resident citizen of Alabama, and has been for more than six months next preceding the filing of this complaint.

9.      Fictitious Defendants 1-7 inclusive, (hereinbefore described in the caption of this complaint and made a part hereof as if fully set out herein), are defendants who are otherwise unknown to the Plaintiff but will be substituted by proper party when same is ascertained.

## FACTS

10.     On or about August 25, 2006, Plaintiff Pearl Putman was the operator of a 1995 Toyota Corolla traveling Hwy 69 North in Walker County, Alabama.

11.     On or about August 25, 2006, Plaintiffs, Alexander Akins was a passenger in the 1995 Toyota Corolla being operated by Plaintiff Pearl Putman traveling Hwy 69 North in Walker County, Alabama..

12.     On or about August 25, 2006, Plaintiffs, Morgan Akins was a passenger in the 1995 Toyota Corolla being operated by Plaintiff Pearl Putman traveling Hwy 69 North in Walker County, Alabama.

13.     On or about August 25, 2006, Defendant Cheshire, while acting within the line and scope of his employment with Defendants, was the driver of a 1995 Ford F-150 truck, VIN 1FTEX15N7SKB99387 traveling north on Highway 69 in Walker County, Alabama.

14.     At the said time and place, the truck and/or trailer, being operated by Defendant

3

Cheshire, while acting individually and/or within the line and scope of his employment with Defendants, rear ended the 1995 Toyota Corolla operated by Plaintiff Pearl Putman and occupied by Plaintiff Alexander Akins and Morgan Akins. As a result thereof, Plaintiffs were caused to suffer serious bodily injuries.

## COUNT I
### (Negligence and Wantonness)

15.     Plaintiffs reallege those material averments contained in paragraphs 1-14 inclusive, by reference herein.

16.     At the aforesaid time and place, Defendant Chesire negligently and/or wantonly caused or allowed the truck and/or trailer he was operating to collide with the 1995 Toyota Corolla driven by Plaintiff Pearl Putman and occupied by Plaintiffs Alexander Akins and Morgan Akins.   Said negligent and/or wanton conduct was a proximate cause of plaintiffs' injuries.

17.     At the aforesaid time and place, Defendant Cheshire, including the above named Fictitious Defendants, negligently and/or wantonly maintained the truck which collided with the plaintiffs' vehicles. Said negligent and/or wanton conduct was the proximate cause of plaintiffs' injuries.

18.     Plaintiffs allege that Defendant Cheshire and Trice were agents, servants, joint venturers, and/or employee of Defendant AllState Electric Company, Inc..is responsible for Defendant Cheshire's conduct.

19.     Plaintiffs further allege that Defendants Cheshire, Trice, AllState Electric Company, Inc., and fictitious defendants 1-6 were negligent and/or wanton and/or reckless in at least, but not limited to, the following:

> failure to exercise reasonable care in the operation of the vehicle;

> operation of said vehicle in such negligent, wanton and/or reckless fashion as to lose control of same, causing and/or allowing said vehicle to collide with the plaintiffs' vehicles;

> failure to maintain proper distance and proper and appropriate spacing between their vehicles to others on the roadway;

> failure to remain attentive to the roadway and traffic conditions;

> failure to obey the Rules of the Road in accordance with the laws of Alabama;

failure to adequately and properly train, educate, control and/or supervise the operation of said truck/trailer; and

failure to use and/or employ properly and adequately trained, educated, and experience drivers in the operation of the truck/trailer.

20.     As a proximate result of said Defendants' negligence and/or wantonness and/or wrongful conduct, which said negligence and/or wantonness and/or conduct combined and concurred, caused or contributed to cause the traumatic injuries suffered by Plaintiffs.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs claim that said defendants are jointly, separately and severally liable as a result of the combining and concurring wrongful conduct of each of them as set out hereinabove. As such, Plaintiffs demand judgment against each of the defendants, jointly and severally, in a sum to be determined by a jury, together with interest from the date of injury, and the costs of this proceeding.

## COUNT TWO
### (Joint Venture)

21.     Plaintiffs reallege those material averments contained in paragraphs 1-20 inclusive, by reference herein.

22.     Plaintiffs allege and aver that on August 25, 2006 and for some time prior thereto Defendant Cheshire entered into and had been a part of a joint venture with Defendants Betty M. Trice and Allstate Electric Co. Inc., including the Fictitious Defendants, which defendants are more particularly described in the caption of this complaint and which description is adopted herein by reference.

23.     As a proximate result of said Defendants' negligence and/or wantonness and/or wrongful conduct, which said negligence and/or wantonness and/or conduct combined and concurred, caused or contributed to cause the serious bodily injuries suffered by Plaintiffs

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs claim that said defendants are jointly, separately and severally liable as a result of the combining and concurring wrongful conduct of each of them as set out hereinabove. As such, Plaintiffs demand judgment against each of the defendants, jointly and severally, in a sum to be determined by a jury, together with interest from the date of injury, and the costs of this proceeding.

## COUNT THREE
### (Negligent and Negligent Entrustment)

24.    Plaintiffs reallege those material averments contained in paragraphs 1-23 inclusive, by reference herein.

25.    Defendant Betty M. Trice, AllState Electric Co, Inc. and Fictitious Defendants had the custody and control of the vehicle involved in the occurrence complained of and did negligently entrust the vehicle to Defendant Cheshire.

26.    Said defendants knew, or by the exercise of reasonable care should have known that said Defendant Cheshire was incompetent to operate the vehicle.

27.    As a proximate consequence of the negligence and incompetency of Defendant Cheshire, concurring with the negligent entrustment of the vehicle to him by Defendants Betty M. Trice and/or Allstate Electric Co. Inc. and/or Fictitious Defendants, Plaintiffs suffered serious and traumatic injuries. In addition to all other allegations, Plaintiffs claim Defendants, jointly, separately and severally caused or contributed to cause the serious bodily injuries to plaintiffs.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs claim that said defendants are jointly, separately and severally liable as a result of the combining and concurring wrongful conduct of each of them as set out hereinabove. As such, Plaintiffs demand judgment against each of the defendants, jointly and severally, in a sum to be determined by a jury, together with interest from the date of injury, and the costs of this proceeding.

## COUNT FOUR
### (Negligent Supervision and Training)

28.    Plaintiffs reallege those material averments contained in paragraphs 1-27 inclusive, by reference herein.

29.    At the aforesaid time and place, and for sometime prior thereto, Defendant Cheshire, while acting within the line and scope of his duty as an agent, representative or employee of Defendants Betty M. Trice and/or AllState ElectricCompany, Inc., including Fictitious Defendants, negligently and/or wantonly caused or allowed the truck and/or trailer he was driving to collide with the plaintiffs' vehicles. Said negligent and/or wanton conduct was a proximate cause of plaintiffs' injuries.

30.    At the aforesaid time and place Defendant Cheshire was engaged in the regular course and scope of his employment for Defendants Betty M. Trice and/or AllState ElectricCompany, Inc, including Fictitious Defendants, are liable for the negligent and/or wanton acts of its agent or employee, Defendant Cheshire.

31.    At the aforesaid time and place, and for sometime prior thereto, the Defendants, Betty M. Trice and/or AllState ElectricCompany, Inc including Fictitious Defendants, were the

employers of Defendant Cheshire, and as such, had the authority to supervise the hiring and training of drivers of motor vehicles operated by or on behalf of said Defendants. Said Defendants negligently and/or wantonly exercised or failed to exercise said supervisory control and said negligent and/or wanton conduct was a proximate cause of the plaintiffs' injuries.

32.    At the aforesaid time and place, and for sometime prior thereto, the Defendants, Betty M. Trice and/or AllState ElectricCompany, Inc, including Fictitious Defendants, were the owners, lessors, and/or lessees of said motor vehicle operated by Defendant Cheshire, and as such, had the authority to supervise the maintenance, operation, and repair of said motor vehicle operated by or on behalf of Defendants Betty M. Trice and/or AllState ElectricCompany, Inc, including Fictitious Defendants. Said Defendants negligently or wantonly exercised or failed to exercise said supervisory control and said negligent and/or wanton conduct was a proximate cause of the plaintiffs' injuries.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs claim that said defendants are jointly, separately and severally liable as a result of the combining and concurring wrongful conduct of each of them as set out hereinabove. As such, Plaintiffs demand judgment against each of the defendants, jointly and severally, in a sum to be determined by a jury, together with interest from the date of injury, and the costs of this proceeding.

JOHN E. WARREN, III (WAR037)

OF COUNSEL:

**WARREN & ASSOCAITES, LLC**
105 19th Street East
Post Office Box 2992
Jasper, Alabama 35502-2992
(205) 221-1044
(205) 221-0311 Fax.

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY**

OF COUNSEL

7

**SERVE DEFENDANTS BY CERTIFIED MAIL**

Gene William Cheshire
256 Co. Rd. 513
Hanceville, AL 35077

Betty M. Trice
4596 U.S. Hwy 11
Springville, AL 35146

AllState Electric Company, Inc.
c/o Ken L. Harrison
4003 1st Avenue N.
Birmingham, AL 35222-1503

# EXHIBIT B

COMMERCIAL AUTO
CA 00 01 1001

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

### A. Description Of Covered Auto Designation Symbols

| Symbol | Description Of Covered Auto Designation Symbols | |
|--------|--------|--------|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-Fault | Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Nonowned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs. |

Copyright, ISO Properties, Inc., 2000

B. **Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1**, **2**, **3**, **4**, **5**, or **6** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

C. **Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

   If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

   1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

   2. "Mobile equipment" while being carried or towed by a covered "auto".

   3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

      a. Breakdown;
      b. Repair;
      c. Servicing;
      d. "Loss"; or
      e. Destruction

**SECTION II - LIABILITY COVERAGE**

A. **Coverage**

   We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

   We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

   We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

   1. **Who Is An Insured**

      The following are "insureds":

      a. You for any covered "auto".

      b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

         (1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

         (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

         (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

         (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

         (5) A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

      c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

 Copyright, ISO Properties, Inc., 2000

2. **Coverage Extensions**

a. **Supplementary Payments**

In addition to the Limit of Insurance, we will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" against the "insured" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

b. **Out-Of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. **Exclusions**

This insurance does not apply to any of the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. **Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

3. **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

4. **Employee Indemnification And Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, ISO Properties, Inc., 2000

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. **Fellow Employee**

   "Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

6. **Care, Custody Or Control**

   "Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **Handling Of Property**

   "Bodily injury" or "property damage" resulting from the handling of property:

   a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

   b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **Movement Of Property By Mechanical Device**

   "Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. **Operations**

   "Bodily injury" or "property damage" arising out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

10. **Completed Operations**

    "Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

    In this exclusion, your work means:

    a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs a. or b. above.

Your work will be deemed completed at the earliest of the following times:

   (1) When all of the work called for in your contract has been completed.

   (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. **Pollution**

    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    a. That are, or that are contained in any property that is:

       (1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

       (2) Otherwise in the course of transit by or on behalf of the "insured"; or

       (3) Being stored, disposed of, treated or processed in or upon the covered "auto";

    b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

    c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

 Copyright, ISO Properties, Inc., 2000

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

12. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

13. **Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION III - PHYSICAL DAMAGE COVERAGE**

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   b. **Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

          Copyright, ISO Properties, Inc., 2000

2. **Towing**

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

a. Glass breakage;

b. "Loss" caused by hitting a bird or animal; and

c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

a. **Transportation Expenses**

We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

b. **Loss Of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

B. **Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

a. **Nuclear Hazard**

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

b. **War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

a. Wear and tear, freezing, mechanical or electrical breakdown.

b. Blowouts, punctures or other road damage to tires.

4. We will not pay for "loss" to any of the following:

Copyright, ISO Properties, Inc., 2000

a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment

b. Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

c. Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

d. Any accessories used with the electronic equipment described in Paragraph c. above.

Exclusions 4.c. and 4.d. do not apply to:

a. Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

b. Any other electronic equipment that is:

(1) Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

(2) An integral part of the same unit housing any sound reproducing equipment described in a. above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

5. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limit Of Insurance

1. The most we will pay for "loss" in any one "accident" is the lesser of:

a. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

# SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

## A. Loss Conditions

1. **Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

5. **Other Insurance**

   a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

      (1) Excess while it is connected to a motor vehicle you do not own.

      (2) Primary while it is connected to a covered "auto" you own.

   b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

   c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

   d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. **Premium Audit**

   a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

   b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. **Policy Period, Coverage Territory**

   Under this Coverage Form, we cover "accidents" and "losses" occurring:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

   The coverage territory is:

   a. The United States of America;

   b. The territories and possessions of the United States of America;

   c. Puerto Rico;

   d. Canada; and

   e. Anywhere in the world if:

      (1) A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

      (2) The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada in a settlement we agree to.

   We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **Two Or More Coverage Forms Or Policies Issued By Us**

   If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V - DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement; or

2. Any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

   (1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

   (2) Otherwise in the course of transit by or on behalf of the "insured";

   (3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

   Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

   (1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in Paragraphs 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in Paragraphs 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

     (1) Snow removal;

     (2) Road maintenance, but not construction or resurfacing; or

     (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

   a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

Copyright, ISO Properties, Inc., 2000

EXHIBIT C



April 16, 2012

Larry Bradford
Johnstone, Adams
2020 Canyon Road, Suite 100
Birmingham, AL  35216

RECEIVED
APR 25 2012

JOHNSTONEADAMS, LLC
File No. 32997

RE:    Pearl Putman, et al. v. Gene William Cheshire, et. al.
       In the Circuit Court of Walker County, Alabama
       Civil Action Number:  CV-06-468
       Your File NO:    32997
       Our Claim NO:   069128205

Dear Mr. Bradford,

With regard to the above referenced matter, your client's insurance carrier has made a demand upon Progressive Direct Insurance Company (the company) to reimburse it for attorney fees and expenses it paid to defend Allstate Electric.  After giving this matter due consideration, the company declines this request.

As to Guardian Ad Litem (GAL) fees, while we believe there is a good argument that these fees should be split between the company and your client's insurance carrier on a pro rata basis, we will nonetheless agree to pay one half of all GAL fees ordered by the court, unless such fees are included in a settlement agreement whereby the plaintiff(s) are to pay said fees.  Further, we believe the fees billed to be excessive, and we would therefore want to object to paying the fees as currently billed, and request the court reduce the same.

Thank you for your consideration in this matter.

Larry Lackey
Claims Attorney
205-739-7637