

FILED

2015 Sep-30  AM 08:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

PENNSYLVANIA NATIONAL )
MUTUAL CASUALTY INSURANCE )
COMPANY, )
       )
       **Plaintiff,** )
       **vs.** )      **CASE NO.  6:14-CV-0038-SLB**
       )
PROGRESSIVE DIRECT INSURANCE )
COMPANY, )
       )
       **Defendant.** )

## <u>MEMORANDUM OPINION</u>

This case is presently pending before the court on cross Motions for Summary Judgment. (Docs. 16, 47.)[1]  Plaintiff, Pennsylvania National Mutual Casualty Insurance Company [Penn National], has sued defendant, Progressive Direct Insurance Company [Progressive], for equitable subrogation and equitable contribution.  Penn National seeks payment from Progressive for Penn National's defense costs that it contends were covered by Progressive's policy.  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that Progressive's Motion for Summary Judgment, (doc. 16), is due to be granted and Penn National's Motion for Summary Judgment, (doc. 47) is due to be denied.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I.  SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("it is never enough simply to state that the non-moving party cannot meet its burden at trial").

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  "[C]ourts are required to view the facts and draw

reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)(per curiam)). Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

"The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment." *Godard v. Alabama Pilot, Inc.*, 485 F. Supp. 2d 1284, 1291 (S.D. Ala. 2007) (citing *Gerling Global Reinsurance Corp. of America v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001)). "Where, as here, the parties file cross-motions for summary judgment, a court 'must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Bio-Medical Applications of Georgia, Inc. v. City of Dalton*, 685 F. Supp. 2d 1321, 1327 (N.D. Ga. 2009) (quoting *Rossingnol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir.2003)). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotations).

## II. <u>STATEMENT OF UNDISPUTED FACTS</u>

The following facts are not in dispute between the parties.  Therefore, the court has considered these undisputed facts as relevant to both Motions for Summary Judgment.

The claims in this case arise out of the defenses provided to Allstate Electric and its employee, Gene Cheshire, in the state court action, *Pearl Putman, et al. v. Gene William Cheshire and Allstate Electric*, Case No. CV-2006-000468, in the Circuit Court of Walker County, Alabama [hereinafter the Underlying Litigation].  Cheshire's policy with Progressive provides an "insured person" includes "any person or organization with respect only to vicarious liability for the acts or omissions of a person" involved in "an accident arising out of the ownership . . . or use of an auto."  (Doc. 49-2 at 5.)  The policy also provides:

> For coverage to apply under this policy, you[2] or the person seeking coverage must promptly report each accident or loss even if you or the person seeking coverage is not at fault.  You or the person seeking coverage must provide us[3] with all accident/loss information including time, place, and how the accident or loss happened.  You or the person seeking coverage must also obtain and provide us the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

(*Id*. at 15 [footnotes added].)  The policy requires any "person seeking coverage" to "promptly call to notify us about any claim or lawsuit and send us any and all legal papers relating to the claim or suit."  (*Id*.)

---

[2]The policy defines "you" as  the "named insured."  (Doc. 49-2 at 5.)

[3]"We" and "us" refer to "the underwriting company providing the insurance," in this case Progressive.  (Doc. 49-2 at 5.)

4

Penn National provided insurance to Allstate Electric.  With regard to "other insurance," this policy states, "For any covered 'auto' you own, this Coverage Form provides primary insurance.  For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." (Doc. 49-5 at 20.)  The truck involved in the accident made the basis of the Underlying Litigation was not owned by Allstate Electric.

The Alabama Supreme Court set forth the following facts regarding the accident and the Underlying Litigation:

> Cheshire is an employee of Allstate Electric, an electrical contractor headquartered in Birmingham.  On August 25, 2006, Cheshire, who lives in Hanceville, was in Jasper, working as a supervisor at an Allstate Electric job site.  Cheshire, who is paid hourly, ended his workday at 3:30 p.m.  Cheshire left the job site in his personal truck, which he uses in the course of his employment with Allstate Electric; Allstate Electric furnishes the gasoline for Cheshire's truck.  Cheshire was hauling a trailer behind his truck that did not belong to Allstate Electric.  On his way home, Cheshire drove to a Home Depot building-supply store to buy drywall for his personal use.  After leaving the Home Depot store, Cheshire stopped at a convenience store to purchase a soft drink.  Leaving the convenience store, Cheshire began driving north on Highway 69 to Hanceville.  Having worked for approximately eight weeks at the Jasper job site, Cheshire had driven Highway 69 numerous times.  Cheshire testified that he was familiar with Highway 69 and knew that "on both sides of the road there are driveways and roads and places to turn all along the way." Shortly after 4:00 p.m., Cheshire drove his vehicle into the back end of a vehicle being driven by Pearl Putman, who had stopped to make a left-hand turn off Highway 69.  The force of the collision propelled Putman's vehicle forward, causing it to collide with a utility pole.  Cheshire testified that "he didn't realize the vehicle was stopped until the last minute." Putman was stopped just over the crest of a hill.

> Riding as passengers in Putman's vehicle were two of her minor grandchildren, Alexander Akins and Morgan Akins (Putman, Alexander Akins, and Morgan Akins are hereinafter referred to collectively as "the

plaintiffs").  All three of the plaintiffs were injured in the accident.  Morgan Akins, who was not wearing her seatbelt at the time of the accident, was the most severely injured; she suffered a traumatic brain injury.  Putman suffered a fractured rib.  Alexander Akins briefly lost consciousness and suffered cuts and bruises.

Cheshire stated that, before the impact, he was traveling between 55 and 60 miles per hour.  Cheshire testified that he was not "paying that much attention" to whether Putman's vehicle was in front of his truck on Highway 69 until he saw her vehicle stopped in the road about 50 yards ahead of him; Cheshire testified that he was "focusing on driving [his] car," and not on which specific car was in front of him.  Cheshire also testified that he knew that Highway 69 is a two-lane road with numerous intersecting driveways and crossroads.  Cheshire stated that he was aware that a driver making a left turn off Highway 69 onto one of the numerous intersecting driveways or cross-roads might have to come to a complete stop and wait for traffic to clear before proceeding.  Cheshire stated that he misjudged the time he would need in order to stop his truck and trailer to avoid hitting Putman's vehicle.  Cheshire also testified that he was aware that it would take more time to stop his truck than it normally would because he was hauling a trailer.  Cheshire stated that he was aware that he "would have to alter [his] driving habits to be more safe if [he was] pulling a trailer than if [he did not] have a trailer."  The Alabama state trooper who responded to the scene of the accident testified that he told Cheshire at the scene of the accident that, in his opinion, Cheshire was driving too fast considering the weight of the trailer he was hauling.

There was no evidence indicating that Cheshire was intoxicated, impaired, or driving erratically at the time of the accident.  Charlotte Bates testified that she was driving behind Cheshire's truck before the accident and that she saw nothing unsafe or unusual about his driving.  Similarly, Audra Borden was also driving behind Cheshire's truck at the time of the accident and testified that Cheshire showed no erratic behavior while driving and that he was not driving at an excessive speed.

The plaintiffs presented evidence indicating that there was sufficient room on the shoulder of Highway 69 for Cheshire to have maneuvered his truck off Highway 69 onto the shoulder, thereby avoiding the collision with Putman's vehicle.  Cheshire agreed that swerving off Highway 69 onto the shoulder would have been a prudent maneuver, but he stated that everything happened so quickly he did not have time to respond in that manner.

On August 29, 2006, the plaintiffs sued Cheshire and Allstate Electric. The plaintiffs alleged against Cheshire negligence and wantonness. The plaintiffs alleged against Allstate Electric negligent and wanton hiring, training, and supervision. The plaintiffs also sought to hold Allstate Electric vicariously liable for Cheshire's allegedly negligent and/or wanton conduct.

The case went to trial in April 2008. At the close of the plaintiffs' evidence, Cheshire and Allstate Electric each filed a motion for a JML on all the claims against them, which motions were denied. At the close of all the evidence, Cheshire and Allstate Electric each expressly renewed their motions for a JML. The trial court denied Cheshire's motion for a JML. The trial court granted Allstate Electric's motion for a JML as to the plaintiffs' claim for **_wanton_** hiring, training, and supervision, but denied the motion as to the remaining claims against Allstate Electric.[4]

The jury returned general verdicts in favor of the plaintiffs and against Cheshire and Allstate Electric on all claims. . . .

*Cheshire v. Putman*, 54 So. 3d 336, 337-39 (Ala. 2010)(emphasis added; footnote added).

In 2006, Cheshire's wife contacted Progressive to report the accident. Thereafter, when the Underlying Litigation was filed, Cheshire or his wife again contacted Progressive. The Progressive agent asked Cheshire to send him a copy of the complaint. At this time, Cheshire had not yet been served; however, he, or his wife, told the Progressive agent that Cheshire's employer, Allstate Electric, had been served. The Progressive agent called Allstate Electric and asked it to fax a copy of the complaint, which Allstate Electric did.

The following week, Larry Bradford, an attorney appointed by Penn National to represent Allstate Electric in the Underlying Litigation, filed an answer on Allstate Electric's

---

[4]Penn National contends that the trial court granted their Motion for Judgment as a Matter of Law as to the claims for **_negligent_** hiring, training, and supervision. (Doc. 45 at 4-5.) Such assertion is not supported by the Supreme Court's opinion. *Cheshire*, 54 So. 3d at 339. However, at oral argument, Progressive agreed that only claims of vicarious liability against Allstate Electric went to the jury.

behalf.  Bradford had represented Progressive insureds for a number of years.  (*See* doc. 46-4 at  50-51.)[5]  Paul Miller represented Cheshire in the Underlying Litigation.

Following a general verdict in favor of the Putman plaintiffs, Cheshire and Allstate Electric appealed.  *Cheshire*, 54 So. 3d at 339.  The Supreme Court denied Allstate's appeal that it was not liable for Cheshire's conduct, *id*. at 341, but reversed the award of punitive damages based on a lack of evidence of wantonness, *id*. at 345.  The Supreme Court held, "Therefore, in light of the fact that the jury returned a general verdict in favor of the plaintiffs and our reversal of the trial court's denial of Cheshire's and Allstate Electric's motions for a JML concerning the plaintiffs' claim of wantonness against Cheshire, we remand this case to the trial court to determine whether to grant a new trial on the remaining issues."  *Id*.

Between the time of the accident in 2006 until May 2011, Penn National did not contact Progressive, and did not ask Allstate Electric to contact Progressive, to file a claim, to demand a defense, or to seek reimbursement of defense costs in the Underlying Litigation.

---

[5]Larry Lackey, Progressive's 30(b)(6) representative testified as follows:

Q.  At any point during the underlying litigation prior to April of . . . 2012, did Progressive ever tell Larry Bradford that it had potential vicarious liability coverage for Allstate Electric?

A.  Progressive did not communicate that to Larry Bradford, but Larry Bradford was panel counsel for Progressive and was well aware of the content of Progressive's policies.

Q.  So, you think you can testify to what Mr. Bradford was aware of?

A.  I think that I can testify that he was aware of the content of Progressive's policies.  I've worked with Larry for over 20 years.

(Doc. 46-4 at 50-51.)

(*See* doc. 46-13 at 37-39, 43-45, 47-48.)  Boyd Wright, a Senior Claims Examiner with Penn National, (doc. 49-13 at 2), testified that the complaint contained non-vicarious allegations, so Penn National had a duty to defend Allstate Electric.  He also testified, "We don't have a copy of Progressive's policy and we understood Allstate had presented a claim to Progressive early on." (Doc. 46-13 at 37-38.)  Allstate did not present a claim to Progressive or demand a defense; the only contact by Allstate with Progressive was the faxing of the complaint at the request of Progressive.  Wright testified that he did not know why Penn National had not filed a claim with Progressive sooner.  (*Id*. at 44-45, 48.)

Following remand from the Alabama Supreme Court, the Walker County Circuit Court referred the parties to mediation.  (*See* doc. 17-3 at 10-11.)  The mediation was held on or about May 10, 2011.  (*See* doc. 49-9 at 2.)  According to Wright, the first mention of Penn National's claim for reimbursement of its defense costs occurred when Wright, outside the presence of any Progressive claim representative or Cheshire's attorney, Paul Miller, asked the mediator  "if Progressive understood that [Penn National was] going to be looking for recovery of defense costs if there was coverage afforded under [its] policy." (Doc. 46-13 at 53-54.)  Thereafter, Wright repeated his intention to claim defense costs to Miller, who conveyed the message to Progressive and then told Wright that "Progressive was not going to pay anything" to Penn National.  (*Id*. at 54.)  Thereafter, Wright sent the following letter to Allstate Electric, with a copy to Bradford, and to Cheshire, care of Miller –

. . .  This letter serves to update you on the current status of [the Underlying Litigation].

9

Penn National recently attended mediation ordered by the Court on the [Underlying Litigation].  Attached is a copy of the [Putman] plaintiff[s'] attorney's mediation submission that was provided to Penn National on May 10, 2011, when the mediation took place.  . . .

In reviewing the plaintiff[s'] letter, a demand was made for $10,000,000 as it is believed the $6,000,000 in available coverage is insufficient.  In the alternative, demand was made for [Allstate Electric's] insurance policy limits. We understand Mr. Cheshire possesses primary coverage with Progressive Insurance with a $50,000 per person, $100,000 per accident limit of liability coverage for bodily injury.  The plaintiff[s] do[ ] not address or acknowledge the existence of this coverage.  (***It is also Penn National's opinion that Progressive should be defending Allstate Electric, however, it has not done so.  Penn National intends to continue with Allstate Electric's defense and will address potential reimbursement of its legal fees once this case is concluded.***)

The purpose of this letter is to provide [Allstate Electric] with current information so you can make appropriate decisions regarding this lawsuit.  . . .

As you are aware, this case was tried to a conclusion and a jury verdict entered against you.  Given the nature of the verdict an appeal was undertaken.  The case was remanded back to the trial Court for retrial, but without punitive damages being awarded.  All defenses available in the first trial remain intact for a second trial.  . . .

At the recent mediation, the final plaintiff demand was $200,000 for Pearl Putnam, $200,000 for Alex Atkins and $5,310,000 for Morgan Atkins.  While the current demands are within Penn National's policy limits, it is our obligation to notify you the presented claims may exceed your limits of liability coverage.  Therefore, you may wish to give consideration in engaging your own personal attorney, at your own expense, to protect any uninsured excess interest beyond your insurance policy coverage.  Such counsel can be associated with defense counsel assigned by Penn National.  You, or your defense counsel, upon reasonable notice, are entitled to obtain copies of relevant information regarding the injury claim presented from our file or that of defense counsel.

10

(Doc. 49-9 at 2-3 [emphasis added].)  This letter was not addressed to Progressive and the parenthetical reference to Progressive does not constitute a demand that Progressive provide Allstate Electric a defense or reimburse Penn National's defense costs.

Several months later, on November 18, 2011, Bradford sent Miller a letter "to demand . . . that Progressive reimburse all litigation expenses for Allstate Electric in this case," and to ask Miller to "notify Jerry Knight or the appropriate Progressive adjuster of this demand." (Doc. 46-9 at 2.)  A few days later, Bradford and Jerry Knight engaged in the following emails:

> From Larry Bradford . . .
> Sent:  Tuesday, November 22, 2011 9:27 AM
> To:  Jerry Knight
> Subject: RE:  [C]heshire demand . . . .
>
> . . .  It really seems to be a simple legal issue.  ***My understanding is that the primary coverage in on the driver*** [Cheshire] because the employer [Allstate Electric] only has respondeat superior liability (there was no claim submitted to the jury for negligent hiring or training or for negligent entrustment).[6]  If so, ***the driver's insurer has the primary defense obligations***.  But what do I know?
>
> From Jerry Knight . . .
> Sent:  Tuesday, November 22, 2011 10:17 AM
> To:  Larry Bradford
> Subject: RE:  [C]heshire demand . . . .
>
> . . .

---

[6]According to the Supreme Court's opinion, "The trial court granted Allstate Electric's motion for a JML as to the plaintiffs' claim for ***wanton*** hiring, training, and supervision, but denied the motion as to the remaining claims against Allstate Electric."  *Cheshire*, 54 So. 3d at 339 (emphasis added).

I don't disagree – and ***I know way less than you obviously***, but my question would be would we owe a defense after the fact, when they knew we were here and did not ask us to provide them with a defense.  Seems like we should have some control over our costs.  I believe we could easily be coerced into picking up the defense from this point forward,[7] but I didn't necessarily read your letter that way – you said "indemnify" – which could be interpreted to mean going forward, or just reimburse what has already been paid.

From Larry Bradford . . .
Sent:  Tuesday, November 22, 2011 10:25 AM
To:  Jerry Knight
Subject: RE:  [C]heshire demand . . . .

. . . I understand your argument about the retroactive demand for payment of legal expenses.  I am not sure but ***Penn National may have made a prior demand to Progressive***.  I will check with it.

This may be a gray area.  On one hand, ***I can see where an insurer would reject fees which were incurred before the defense and indemnity demand was made***, but, on the other hand, ***an insurer has a duty to investigate coverage for all potential insureds under the policy.***  Let me see what Penn National says about the timing of the indemnity demand.

(Doc. 46-7 at 2 [emphasis and footnotes added].)  Although Penn National contends that it

never saw the Progressive policy,[8] Bradford's letter to Miller and his emails with Knight

_____

[7]Penn National continued to control Allstate Electric's defense through settlement and dismissal of the case.  Progressive was never asked to "pick up" the defense.

[8]At oral argument, counsel for Penn National emphasized the fact that Progressive's policy was a "manuscripted" policy and not a standardized policy from the Insurance Services Office ["ISO"].  However, it has not indicated which provisions, if any, it was unaware of without viewing the actual Progressive policy.  "Three particular policies dominate the market [of personal automobile coverage] – the Personal Auto Policy and Business Auto Policy drafted by [ISO] and the Family Car Policy drafted by the National Association of Independent Insurers (NAII).  Some insurers – particularly larger ones such as State Farm or Allstate – promulgate their own policies, but even in such cases the provisions tend to track closely with the provisions of the standard form policies issued by ISO and NAII."  Thomas Farrish, *"Diminished Value" in Automobile Insurance: the Controversy and its Lessons*, 12 CONN. INS. L.J. 39, 42 (2005).  The ISO Personal Automobile Policy provides the following language regarding post-loss duties:

12

indicate that he was aware Progressive's policy provided coverage for Allstate Electric on

the vicarious liability claims.  He also indicated he believed Allstate Electric had made a

claim to Progressive.

On March 6, 2012, Bradford sent a letter to Larry Lackey, Progressive's Claims

Attorney, in which he wrote:

> I am defending Gene Cheshire's employer, Allstate Electric, in this
> case.  As you know, the jury found that Mr. Cheshire was acting within the line

-----

> We have no duty to provide coverage under this policy unless there has been full
> compliance with the following duties —
>
> > A.  We must be notified promptly of how, when and where the accident or
> > loss happened.  Notice should also include the names and address of any
> > injured person and of any witnesses.
> >
> > B.  A person seeking any coverage must —
> >
> > . . .
> >
> > 2.  Promptly send us copies of any notices or legal papers received in
> > connection with the accident or loss.  . . .

Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, 13 COUCH ON INSURANCE
§ 186:1 (3d ed. 2014); *see also* Personal Auto Policy, PP 00 01 01 05, at 12 of 15,  [hereinafter the
ISO   policy],   http://www.independentagent.com/Education/VU/   SiteAssets/
Documents/ISO/PP/PP00010105.pdf. Thus, both the ISO policy and the Progressive policy required
notice of the accident and forwarding of suit papers.

Moreover, both the ISO policy and the Progressive policy provide coverage for a person or
organization, like Allstate Electric, that may be legally responsible for the acts or omissions of the
named insured.  *See* ISO policy at 2 of 15 ("'Insured' as used in this Part means:  1.  You or any
'family member' for the ownership, maintenance or use of any auto . . . [and] 3.  For 'your covered
auto', any person or organization but only with respect to legal responsibility for acts or omissions
of a person for whom coverage is afforded under this Part . . . ."); doc. 46-12 at 5 (defining "insured
person" as "a.  you or a relative with respect to an accident arising out of ownership, maintenance,
or use of an auto," and "c.  any person or organization with respect only to vicarious liability for the
acts or omission of a person described in a . . . .").

13

and scope of his employment or agency for Allstate Electric.  The Alabama
Supreme Court reversed the award of punitive damages, but the trial court has
still not decided whether the plaintiffs are entitled to a new trial.

I am enclosing the GAL's statement in the amount of $30,541 for Jim
Brakefield's services through December 12, 2011.  Please contact me after you
have an opportunity to make a decision on Allstate Electric's indemnity
demand as well as the separate issue concerning the payment of GAL fees.

(Doc. 17-3 at 15.)  The issue regarding the guardian ad litem fees was resolved between the

parties and is not a part of the instant action.  On April 16, 2012, Lackey responded to

Bradford's demand, stating –

. . . your client's insurance carrier has made a demand upon Progressive Direct
Insurance Company . . . to reimburse it for attorney fees and expenses it paid
to defend Allstate Electric.  After giving this matter due consideration, the
company declines this request.

(Doc. 17-3 at 17.)

On January 8, 2014, Penn National filed the instant action.  (*See generally* doc. 1.)

Its Complaint for Declaratory Judgment contains two counts:  Count One – Equitable

Subrogation and Count Two – Equitable Contribution.  (*Id*. at 6, 8.)  It seeks, *inter alia*,

$426,766.13, which it contends are the cost of its defense of Allstate Electric, on its

subrogation claim, and $213,383.06, which it contends is 50% of its defense costs, on its

contribution claim.  (Doc. 1 at 7, 9.)

### III.  <u>PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT</u>

The undisputed facts demonstrate that Allstate Electric was an additional insured under Cheshire's insurance policy for the vicarious liability claim in the Underlying Litigation. This policy required the person seeking coverage to call Progressive to notify it of a claim or lawsuit, to forward suit papers, and to cooperate with the defense. Other than faxing a copy of the complaint to Progressive, at Progressive's request on behalf of Cheshire, Allstate Electric did not give Progressive notice of its claim for coverage, demand a defense, or otherwise indicate that it was looking to Progressive for a defense or indemnity on the vicarious liability claim. Penn National provided Allstate a defense on all claims – including the vicarious liability claims. Thus, the question presented is whether, under these circumstances, Penn National has a right to recover Allstate's defense costs. The court finds the answer is "no".

## A. STATUTE OF LIMITATIONS

Progressive contends that it is entitled to summary judgment on Penn National's subrogation claim because the claim accrued in 2006 and is thus time barred by Alabama's six-year statute of limitations on contract claims. Penn National contends that the statute of limitations did not begin to run until the Underlying Litigation was dismissed.

"Alabama follows 'the well established rule that a subrogee can acquire no greater rights than those possessed by the principal whose rights he asserts.'" *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Bradford*, 164 So. 3d 537, 539 (Ala.,2014)(quoting *Home Ins. Co. v. Stuart–McCorkle, Inc.*, 285 So. 2d 468, 472 (Ala. 1973)). This principle applies to determining the applicable statute of limitations. *Id*. (citing *Home Ins.*, 285 So. 2d at 472).

"Thus, in a subrogation case, the statute of limitations begins to run when the cause of action accrues, and 'the cause accrues as soon as the party in whose favor its arises is entitled to maintain an action thereon.'" *Id.* (quoting *Home Ins.*, 285 So. 2d at 473).

"The statute of limitations for a claim based on a contract is six years. Ala. Code 1975, § 6-2-34(9). This six-year period begins to run when the contract is breached. *Stephens v. Creel*, 429 So. 2d 278, 280 (Ala. 1983); *Lipscomb v. Tucker*, 294 Ala. 246, 258, 314 So. 2d 840, 850 (1975)." *AC, Inc. v. Baker*, 622 So. 2d 331, 333 (Ala. 1993). The statute of limitations for a breach of contract claim does not begin to run at the time actual damages are sustained. *Id*. Moreover, Alabama "has never applied a 'continuing contract' doctrine."[9] *Id*. at 335. However, the Alabama Supreme Court has indicated that, if it were inclined to allow a "continuing contract" action, it would limit the action "to those breaches that occurred during the six years before the action was filed." *Id*. at 335.

Therefore, assuming Penn National could establish its right to recover defense costs, its remedy would be limited to those costs incurred after January 8, 2008 – six years before Penn National filed its Complaint in the instant action. However, for the reasons set forth below, the court finds that Penn National is not entitled to its defense costs by reason of contribution or subrogation.

_____

[9]In support of its argument that the cause if action does not accrue until the underlying litigation is finally resolved, Penn National cites *Hartford Acc. & Indemn. Co. v. Cosby*, 173 So. 2d 585, 590 (Ala. 1965) and *Boyd Bros. Transp. Co.*, 540 F. Supp. 579, 582 (M.D. Ala. 1982), aff'd 729 F. 2d 1407, 1409 (11th Cir. 1984). (See doc. 45 at 20-21.) These cases, however, decide when the statute of limitation on tort claims accrues – not a breach-of-contract claim. *See Boyd Brothers*, 540 F. Supp. at 581-82; *Cosby*, 173 So. 2d at 587-88.

The court rejects Penn National's argument that the statute of limitations did not begin to run until the lawsuit was finally settled.  As support for its argument, Penn National refers the court to the section of Progressive's policy entitled, "Legal Action Against Us," (doc. 45 at 19); this section provides:

> We may not be sued unless there is full compliance with all the terms of this policy.
>
> We may not be sued for payment under Part I – Liability to Others until the obligation of an insured person under Part I to pay is finally determined either by judgment after trial against that person or by written agreement of the insured person, the claimant, and us.  No one will have the right to make us a party to a lawsuit to determine the liability of an insured person.
>
> If we retain salvage, we have no duty to preserve nor otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

(Doc. 46-12 at 18.)  This provision does not control the statute of limitations for a breach of contract action by an insured against Progressive.  The policy requirement that a final judgment be entered before a legal action is brought refers not to an insured's action against his insurer; rather it specifically refers to the right of a third party to recover directly from Progressive.  (*See* doc. 45 at 5 [In Part I – Liability to Others section of the policy, Progressive agrees to "pay damages for bodily injury and property damage for which an insured person ***becomes legally responsible*** because of an accident."  (emphasis added)].)  Penn National's argument to the contrary is without merit.

## B.  CONTRIBUTION

Penn National argues:

17

Where an insured is covered under two insurance policies, the insurers share equally the cost to defend the insured. *State Farm Mutual Auto. Ins. Co. v. General Mutual Ins. Co.,* 210 So. 2d 688 (Ala. 1968). Thus, equitable contribution allows an insurer with a concurrent duty to defend to recover from the other insurer half of the cost incurred defending an insured because the insurers were obliged to share the cost of the insured's defense equally. *State Farm*, 210 So. 2d at 693.

(Doc. 48 at 15-16.) However, Alabama does not recognize a claim for contribution merely upon a showing that an insured is covered by two insurance policies.

For contribution to apply under Alabama law, the two insurers must both "have ***primary*** insurance coverage of the same insurable interest, subject matter, and risk." *Nationwide Mut. Ins. Co. v. Hall*, 643 So. 2d 551, 561 (Ala. 1994)(citing, inter alia, *State Farm Mut. Auto. Ins. Co. v. General Mut. Ins. Co.*, 210 So. 2d 688 (1968))(emphasis added); *see also Employers' Mut. Cas. Ins. Co. v. Hughes*, 780 F. Supp. 2d 1204, 1208-09 (N.D. Ala. 2011). In this case, the basis of Penn National's claims for subrogation is its assertion that its policy was excess as to the claims against Allstate Electric based on vicarious liability. (*See* doc. 1 ¶ 19; doc. 48 at 10 [noting that Penn National policy provides that it is excess for any covered auto not owned by Allstate]; *id*. at 20-22 [arguing that Penn National is entitled to equitable subrogation as the excess insurer, while noting that contribution applies when insurers have a "common obligation."].) "Contribution," as distinguished from "subrogation," is not available between an excess insurer and a primary insurer. *Hall*, 643 So. 2d at 561. The facts are undisputed that Progressive had a duty to defend Allstate Electric, if at all, only on the claims alleging vicarious liability, for which it was primary and Penn National was excessive.

Therefore, Count Two of Penn National's Complaint, asserting a claim for equitable contribution, will be dismissed.

## C.  EQUITABLE SUBROGATION

In Alabama –

> Under equitable subrogation principles, a subrogee has no greater rights than the subrogor; thus, the subrogee is entitled to only those remedies to which the subrogor is entitled, and no greater remedies.  No new cause of action is created, because the claim of the subrogee is derivative of the claim of the subrogor, and only changes the ownership of the claim.

*Ex parte Webber*, 157 So. 3d 887, 897 (Ala. 2014)(quoting 83 C.J.S. *Subrogation* § 88 (2010)).

### 1.  Insurance Policy

Alabama follows general and well-established principals of contract construction in finding the meaning of insurance policy terms:

> A contract of insurance, like other contracts, is governed by the general rules of contracts.  Insurance companies are entitled to have their policy contract enforced as written.  Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions.

> If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction.  The fact that the parties interpret the insurance policy differently does not make the insurance policy ambiguous.  While ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning.  Where the parties disagree on whether the language in an insurance contract is ambiguous, a court should construe language according to the meaning that a person of ordinary intelligence would reasonably give it.

*Certain Underwriters at Lloyd's, London v. Kirkland*, 69 So. 3d 98, 101 (Ala. 2011)(quoting

*Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691–92 (Ala. 2001)(quoting

*Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d 866, 870

(Ala.1996)))(internal quotations omitted).

### 2.  Covered Claims

The parties agree that, for the vicarious liability claims asserted against Allstate

Electric in the Underlying Litigation, the Progressive policy provides primary coverage and

the Penn National policy provided excess coverage.   The Penn National policy provided

primary coverage for the claims alleging direct liability – negligent/wanton hiring, (doc. 1

at 18-19), negligent entrustment, (doc. 1 at 20),  negligent/wanton supervision and training,

(doc. 1 at 18-19, 20-21).    Penn National contends that judgment as a matter of law was

entered as to the claims of direct liability against Allstate Electric and Progressive agrees.

The Alabama Supreme Court noted, "The trial court granted Allstate Electric's motion

for a JML [judgment as a matter of law] as to the plaintiffs' claim for ***wanton*** hiring,

training, and supervision, but denied the motion as to the remaining claims against Allstate

Electric." *Cheshire*, 54 So. 3d at 339 (emphasis added).  Therefore, it appears that the claims

of ***negligent*** hiring, training, and supervision were not dismissed before the jury's verdict.

However, the parties agree only vicarious liability claims remained against Allstate Electric

after remand; therefore, the court assumes that the only claims remaining against Allstate

Electric after remand were those for which Progressive's coverage was primary and Penn

National's coverage was excess.

### 3.  Waiver of Defenses

Penn National argues that Progressive has waived its right to raise defenses to its subrogation claim based on its April 2012 letter denying Penn National's request for reimbursement of defense costs.  It contends:

> The Alabama Supreme Court holds that "an insurer who disclaims liability solely on a theory of noncoverage thereby waives his defenses with respect to any grounds of forfeiture which might have been raised." *Home Indemn. Co. v. Reed Equip. Co.*, 381 So. 2d 45, 50 (Ala. 1980), citing *St. Paul Fire and Marine Insurance Co. v. Smith*, 194 So. 2d 830 (Ala. 1967). "The doctrine of waiver may extend to practically every ground on which an insurer may deny liability based on forfeiture." *Id*., citing 43 Am. Jur. 2d, Insurance §§ 1058, 1184.  An insurer waives an insured's forfeiture of coverage for failure to give timely notice by denying coverage on other grounds. *National Life & [Accident] Ins. Co. v. Allen*, 234 So. 2d 567, 570 (Ala. 1970).

(Doc. 45 at 17.)  Although Penn National correctly cites this law of waiver, it bases its argument on a faulty premise – that Progressive's April 2012 letter denying Penn National's claim for defense costs stated a specific ground for non-coverage.  It did not.

In Alabama –

> Where an insurer *specifically* disclaims liability because of one ground of forfeiture, it waives all other grounds of forfeiture which might have been stated but were not.  *Auto-Owners Insurance Co. v. English*, 266 Ala. 80, 94 So. 2d 397 (1957).  Similarly, an insurer who disclaims liability *solely* on a theory of noncoverage thereby waives his defenses with respect to any grounds of forfeiture which might have been raised.  *St. Paul Fire and Marine Insurance Co. v. Smith*, 280 Ala. 425, 194 So. 2d 830 (1967).

*Home Indem. Co.*, 381 So. 2d at 50 (emphasis added); *see also Pennsylvania Nat. Mut. Cas. Ins. Co. v. J.F. Morgan General Contractors, Inc.*, 79 F. Supp. 3d 1245, 1256 (N.D. Ala. 2015).

Lackey provided no reason for Progressive's denial of Penn National's demand for Allstate Electric defense costs.  Therefore, Progressive did not waive any defense by virtue of its assertion of a specific reason for denying Penn National's claim.

### 4.  Reason and Length of Delay

As set forth above, the Progressive policy requires any person seeking coverage to "promptly call to notify [Progressive] about any claim or lawsuit and [to] send [it] any and all legal papers relating to the claim or suit."  (Doc. 17-3 at 53.)  "'Prompt' notice has . . . been interpreted to mean that such notice must be given within a reasonable time in view of all the facts and circumstances."  *Travelers Indem. Co. v. Miller*, 86 So. 3d 338, 342 (Ala. 2011)(citing *St. Paul Fire & Marine Ins. Co. v. Elliott*, 545 So. 2d 760 (Ala. 1989)).

> The purposes behind these two types of notice is well settled:  An insurer must have timely notice of an event or occurrence in order to form an intelligent estimate of its rights and liabilities under the policy, to afford it an opportunity to investigate, to allow it to participate in the litigation, and to prevent fraud. *Pan American Fire & Cas. Co. v. DeKalb–Cherokee Counties Gas Dist.*, 289 Ala. 206, 266 So. 2d 763 (1972).  The purpose of a notice-of-lawsuit provision in an insurance policy is to give the insurer the opportunity to control litigation on which its contractual liability hinges.  *North River Ins. Co. v. Overton*, 59 So. 3d 1 (Ala. 2010).

*Id*. at 347; *see also Watts v. Preferred Risk Mut. Ins. Co.*, 423 So. 2d 171, 173 (Ala. 1982)("The purpose of the provision that the insured immediately forward legal process to the insurer is to afford the insurer an opportunity to control litigation." (citing *Brown v. State Farm Mut. Auto. Cas. Ins. Co.*, 506 F.2d 976, 978 (5th Cir. 1975)).  Under Alabama law, "The failure of the insured to comply within a reasonable time with a provision in an automobile liability policy requiring the forwarding of suit papers 'release[s] the insurer from

22

the obligations imposed by the contract, although no prejudice may have resulted.'" *Watts*,

423 So. 2d at 173 (quoting *Standifer v. Aetna Cas. & Surety Co.*, 319 F. Supp. 1385, 1387

(N.D. Ala. 1970)(quoting *American Fire & Cas. Co. v. Tankersley*, 116 So. 2d 579, 582 (Ala.

1959))).

> . . . [A] requirement to "immediately" forward suit papers means "'within a
> reasonable time' in view of all the facts and the circumstances of the case."
> [*Southern Guaranty Ins. Co. v.*] *Thomas*, 334 So. 2d [879,] 882 [(Ala.
> 1976)](internal citations omitted).  The court considers (1) the length of the
> delay and (2) the reasons for the delay to determine the reasonableness of
> delay.  *Id*. The insurer need not show prejudice for delay to be unreasonable.
> *Id*.
>
> . . .
>
> When no legitimate reason is offered for the delay, . . . courts can find
> delays unreasonable as a matter of law.  *See Thomas*, 334 So. 2d at 884-[85]
> (six month delay found unreasonable as a matter of law when offered excuses
> – insured's belief that no coverage existed, belief that insured not liable for
> accident, and belief that no suit would be filed – are objectively unreasonable);
> *B&M Homes, Inc. v. Am. Liberty Ins. Co.*, 356 So. 2d 1195, 1196 (Ala.
> 1978)(seven month delay found unreasonable as a matter of law when no
> excuse provided); *Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala.
> 1983)(8 month delay found unreasonable when no excuse provided).

*J.F. Morgan General Contractors, Inc.*, 79 F. Supp. 3d at 1257-58.

In this case, as set forth above, Penn National has offered no legitimate reason for its

failure to call Progressive to notify Progressive of its claim for defense costs or its failure to

provide legal papers.  Indeed, Penn National's 30(b)(6) representative, Boyd Wright, testified

that Penn National did not contact Progressive between the time of the accident and May

2011, it did not encourage or request Allstate Electric to contact Progressive, and he does not

know why.  (Doc. 46-13 at 43-45, 47-48.)  He mentions that Penn National did not have a

copy of the Progressive policy.  However, the Progressive policy did not contain non-standard provisions regarding coverage for vicarious liability claims and/or notice of a claim and forwarding suit papers.  Penn National represented Allstate Electric throughout these proceedings.  Certainly, Penn National cannot be heard to complain that it was unaware of the requirement to provide notice and forward suit papers to the insurer.  Moreover, Penn National's 30(b)(6) representative, Wright, testified that he did not "think the [Penn National] claim handler ever thought about [contacting Progressive or having Allstate Electric contact Progressive].  (Doc. 46-13 at 47-48.)  Penn National did not notify Progressive that it intended to seek reimbursement of defense costs before 2011.  (*Id*. at 52.)  Apparently, the first mention of Penn National's intention to seek subrogation from Progressive was at the mediation in May 2011.  Penn National could not reasonably have relied on Allstate Electric's act of simply faxing a copy of the complaint in the Underlying Litigation – without discussion and/or demand – as notice and a demand for a defense or intent to claim reimbursement for defense costs in accordance with the terms of the Progressive policy.

Under the circumstances, the court finds that Penn National has not offered a legitimate reason for failing to call Progressive to notify it of a claim, failing to forward suit papers, failing to allow Progressive an opportunity to control the litigation, and failing to indicate its intent to seek reimbursement of defense costs until after the jury trial and after the appeal to the Alabama Supreme Court.

Penn National contends that the fact that Allstate faxed a copy of the complaint to Progressive satisfies Allstate's responsibilities under the Progressive policy.  The court

24

disagrees.  The Progressive policy requires each party seeking coverage to "promptly call to notify us about a claim or lawsuit and send us any and all legal papers relating to the claim or suit."  (Doc. 17-3 at 53.)  This policy language expressly requires the person seeking coverage to contact Progressive with its claim and to send legal papers.  The plain language of the policy indicates that Allstate Electric could not rely on notice to Progressive of the Complaint – it had to "call" Progressive.  (*Id.*)

The court notes that this case does not present an unsophisticated insured against a sophisticated insurer.  Both Penn National and Progressive are well acquainted with the requirements of notice in insurance policies.  Moreover, the court finds Penn National never relinquished control of Allstate Electric's defense to Progressive – not even after its notice to Progressive that it intended to seek reimbursement of its defense costs.  It cannot now be heard to complain about the costs incurred as a result of its actions and inactions.

Because Penn National failed to notify Progressive of its claim and to relinquish control of the defense, the court finds that its subrogation claim is due to be dismissed

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant Progressive is entitled to judgment as a matter of law.  An Order granting Progressive's Motion for Summary Judgment, (doc. 16), will be entered contemporaneously with this Memorandum Opinion.

## IV. PENN NATIONAL'S MOTION FOR SUMMARY JUDGMENT

For the reasons set forth above, the court finds that Progressive is entitled to judgment as a matter of law on Penn National's claims.  Therefore, the court will deny Penn National's Motion for Summary Judgment without additional discussion.[10]

**DONE** this 30th day of September, 2015.

Sharon Lovelace Blackburn
_____
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE

---

[10]The court notes one issue raised by Penn National.  In its Brief in Support of its Motion for Summary Judgment, Penn National contends that "Persuasive Authority Has Upheld Summary Judgment For An Excess Commercial Auto Insurer Recovering The Cost to Defend Its Insured On Facts Identical To This Case." (Doc., 48 at 27.)  It argues, "This case mirrors every material aspect of *Westfield Ins. Co. v. Allstate Ins. Co.*, where the Michigan Court of Appeals upheld summary judgment for an employer's insurer seeking reimbursement from the employee's insurer for the cost to defend the employer in a lawsuit asserting claims against the employer for vicarious liability." (*Id*. [citing *Westfield Ins. Co. v. Allstate Ins. Co.*, Docket No. 295486, 2012 WL 2362457 (Mich. App. June 21, 2012)].)  However, the *Westfield* court did not address the issue of notice or demand because those issues were not raised on appeal; the court held:  "Contrary to the parties' extensive arguments, in accordance with the actual statement of the issue on appeal, the question to be resolved by this Court does not encompass the obligation of Allstate to provide a defense for Alta.  Rather, the issue on appeal pertains to the trial court's limitation of the amount to be reimbursed to Westfield for provision of a defense." *Westfield*, 2012 WL 2362457 at *2.  Although the facts may resemble the facts in this case, the issues are different.  The *Westfield* court held, "Because both Westfield and Allstate acknowledge a 'duty' to defend an insured under their respective policies, the question that comprises the focus of this appeal is how to allocate the costs incurred for providing a defense to Alta." *Id*. at *4.  In this case, there has been no acknowledgment of a duty by Progressive to defend Allstate Electric.

26